IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| GREGORY KENT GANS | : | CIVIL ACTION |
| 2506 S. 68th Street | : | NO.: |
| Philadelphia, PA 19142 | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | | |
| Defendant | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, for his Complaint, does hereby avers the following:

### JURISDICTIONAL STATEMENT

1.      This Federal District Court has jurisdiction of this action as it is brought

pursuant to 28 U.S.C.S. §1346(b), 2671-80, commonly known as the Federal Tort

Claims Act.

2.      This is a medical malpractice matter brought for improper and inadequate

medical care rendered by the Veterans Administration Medical Center of

Philadelphia, PA and its medical personnel and/or employees.

## PARTIES AND VENUE

3.    Plaintiff, Gregory Kent Gans (hereinafter "plaintiff"), is an adult individual and citizen of the Commonwealth of Pennsylvania residing at the address listed in the caption.

4.    Defendant is the United States of America, it officers, agents, employees and representatives.

5.    The United States may be served with process in accordance with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the Summons and Complaint on the United States Attorney Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, by certified mail, return receipt requested at the following address:

> U.S. Attorney's Office
> 615 Chestnut Street, Suite 1250
> Philadelphia, PA 19106

6.    Service is also affected by serving a copy of the Summons and Complain on

Loretta E. Lynch, Attorney General of the United States of America, by certified

mail, return receipt requested at the following address:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> U.S. Dept. of Justice
> 950 Pennsylvania Avenue, NW
> Washington, D.C. 20530-0001

7.     Defendant at all relevant times acted by and through, and is liable for, its

agency, Veterans Administration Medical Center and its employees Pratap Yagnik,

M.D., Sharayne Mark, M.D., Sanjay Dixit, M.D., Sean Green, M.D. and Vickas

Patel, M.D.

8.     The Veterans Administration Medical Center (hereinafter referred to as the

"VAMC") is a federal agency that provides health care services and maintain a

place of operation, headquarters, and/or business at 1120 Vermont Avenue NW,

Washington, D.C. 20421, and maintain a local hospital facility at 3900 Woodland

Avenue, Philadelphia, PA 19104.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as the United

States is a Defendant and Plaintiff Gregory Kent Gans resides in this district.

Further, venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as a

substantial part of the events or omissions giving rise to the claim occurred within

this judicial district.

## JURISDICTION PREREQUISITES

10.     On or about December 5, 2014 plaintiff properly presented a Claim for

Damage, Injury or Death (Standard Form 95) with the Department of Veterans

Affairs (hereinafter referred to as "the Department") for medical negligence of

the VAMC.        Exhibit "A".

11.     Said form alleged that Plaintiff was caused to suffer an ischemic stroke

resulting in blindness, by the negligence and carelessness of the VAMC and its

medical personnel and/or employees, namely Pratap Yagnik, M.D., Sharayne

Mark, M.D., Sanjay Dixit, M.D., Sean Green, M.D. and Vickas Patel, M.D.

12.     The Department acknowledged receipt of the claim on or about December

22, 2014.  Exhibit "B".

13.     Plaintiff complied with the requests of the Department for additional

information in support of his claim.

14.     Upon review of the documentation supplied in support of plaintiff's claim,

plaintiff received notification from Regional Counsel for the Department on June

11, 2015, that the claim was denied. Exhibit "C".

## SUBSTANTIVE ALLEGATIONS

15.     On May 16, 2013 Plaintiff presented to the VAMC where he conveyed

complaints of difficulty in speaking, having trouble finding the right words and not

being able to speak clearly.  He also complained of a left frontotemporal

headache, tingling in the right side of his mouth, and imbalance.

16.     Plaintiff was evaluated by the Neurology service in the Emergency

Department who was of the impression of that "most likely the patient has a

finding suggestive of TIA (transient ischemic attack) in the posterior circulation.

17.     Neurology service, Pratap Yagnik, M.D.'s recommendations included starting

Plaintiff on aspirin 325 mg a day, statin therapy to manage hyperlipidemia, and

to obtain various studies including a carotid ultrasound, an echocardiogram of the

heart, and an MRA (magnetic resonance angiogram) of the Circle of Willis.

18.    On May 20, 2013 Plaintiff presented to the VAMC Emergency Department

with right-sided numbness and headache.  He was discharged with a

recommendation to start aspirin and Plavix, and to undergo an MRA of the brain

and neck.

19.    An MRI (magnetic resonance imaging) of the brain dated May 20, 2013

revealed a small degree of atherosclerosis in the A1 branch of the left anterior

cerebral artery.  The results were conveyed to Dr. Yagnik.

20.    MRA of the neck dated July 25, 2013 revealed atherosclerosis in the right

internal carotid artery of less than 30% of the normal diameter and

atherosclerosis in the left internal carotid artery of 40%-50% of the interluminal

diameter. The results were conveyed to Dr. Yagnik.

21.    On September 18, 2013 Plaintiff was examined by cardiology fellow Sharayne

Mark, M.D. and attending cardiologist Sanjay Dixit, M.D. who recommended

Plaintiff undergo fasting lipids, a nuclear stress test, Holter monitoring and to

begin taking Lisinopril.

22.     In November 2013 Plaintiff saw his primary care physician, Dr. Sean Green.

Dr. Green does not mention Plaintiff's recent history of a transient ischemic

attack or the presence of carotid atherosclerosis despite said information being

readily obtainable in Plaintiff's VA Medical Center's electronic medical records. At

said visit Plaintiff was instructed by Dr. Green to return in 3 months.

23.     Plaintiff was seen by the Cardiology service at the VAMC, specifically

Sharayne Mark, MD and Vickas Patel, MD on December 4, 2013 who

recommended that Plaintiff take atorvastatin 40 mg/day, aspirin 81 mg/day, and

Plavix 75 mg/day. Plaintiff was instructed to return in 3 months.

24.     In December 2013 and January 2014 the Cardiology consultant placed a Zio

Patch cardiac monitor on Plaintiff. This monitoring failed to reveal the etiology of

the TIA in May 2013.

25.     In April 2014 Plaintiff was seen by Dr. Green for a routine follow-up visit. Dr.

Green instructed him return in 3 months.

26.     On June 1, 2014 Plaintiff presented to the VAMC complaining of severe back

pain and a productive cough.  At that time, he also reported having a dark

shadow on and off in his left eye for 3 days. He was discharged that day without

any evaluation for his visual symptoms.

27.     On or about June 3, 2014, Plaintiff again presented to the VAMC Emergency

Department. While waiting in the Emergency Department he experienced loss of

vision in his left eye. He reminded the ED staff that he was seen in the ED on

June 1, and also reported problems with his left eye at that time.

28.     Plaintiff was seen by an Ophthalmology consultant who felt that he had

suffered an untreatable central retinal artery occlusion due to a multiple emboli.

The ophthalmologist also determined that Plavix and statin therapy had not been

dispensed to Plaintiff since November/December 2013.

29.     On June 4, 2014, Plaintiff had a carotid ultrasound which revealed severe

plaque in the proximal left internal carotid artery with increased velocities

indicating greater than 70% internal carotid artery stenosis. An MRI of the brain

performed revealed "acute/subacute embolic infarct in the posterior and lateral

left parietal lobe, small foci of acute/subacute emboli involving the posterior and

medial left frontal lobe, and an infarct in the deep white matter of the left

occipital lobe.

30.    MRI study of the neck revealed marked narrowing of the proximal left internal

carotid artery with greater than 90% stenosis.  The radiologic findings are felt to

be consistent with a severe atherosclerotic lesion in the left internal carotid artery.

31.    Plaintiff continued to complain of blindness in all four quadrants of vision in

the left eye and he was only able to see gross hand movements.

32.    Plaintiff underwent a carotid endarterectomy on June 9, 2014.

33.    Plaintiff suffers permanent vision loss in the left eye.

## CAUSE OF ACTION

34.    Plaintiff repeats each and every allegation of all preceding and subsequent

paragraphs with the same force and effect as if set forth at length herein.

35.    At all relevant times, defendant through its agents, servants and/or

employees, including but not limited to the Department, the VAMC and Drs.

Sharayne Mark, Sanjay Dixit, Pratap Yagnik and Sean Green and others, was

engaged in rendering professional medical care to plaintiff and was obliged to

properly treat and supervise the treatment of plaintiff in a reasonable matter so

as to avoid any unreasonable risks of harm to him.

36.    At all relevant times, the Department, the VAMC and Drs. Drs. Sharayne

Mark, Sanjay Dixit, Pratap Yagnik and Sean Green and others were servants,

employees, agents, and/or ostensible agents of Defendant and were acting

within the course and scope of their employment and/or authority for and on the

business of Defendant and under its control or right to control.

37.    Defendant, as well as its agents, servants, employees and/or ostensible

agents, owed plaintiff's decedent a duty to possess and exercise that degree of

professional skill, care and knowledge ordinarily possessed and exercised by and

required of practitioners within the healthcare profession and/or within their

respective fields of specialization, including but not limited to internal medicine,

neurology and cardiology.

38.     As a direct and proximate result of the negligence of the Department, the

VAMC, Drs. Drs. Sharayne Mark, Sanjay Dixit, Pratap Yagnik and Sean Green

and other servants, employees, agents, and/or ostensible agents of Defendant,

plaintiff suffered severe injuries, including stroke and central retinal arterial

occlusion resulting in his permanent blindness.

39.     The injuries and damages sustained by plaintiff were directly and proximately

caused by the negligence of Defendant, which consisted of the following:

     a.     failing to obtain adequate and necessary medical and surgical

          consultations regarding plaintiff's aforementioned carotid disease

          and atherosclerosis;

     b.     failing properly to monitor the condition of plaintiff during the

          course of the aforesaid treatment;

     c.     failing to take appropriate measures to prevent stroke, central

retinal arterial occlusion and loss of vision;

d.      failing to promptly detect progressing atherosclerosis and

carotid disease;

e.      failing to make a timely diagnosis of atherosclerosis and carotid

disease;

f.      failing to interpret the worsening of the plaintiff's physical

condition;

g.      failing to increase the frequency of monitoring of plaintiff's

physical condition;

h.      performing physical examinations too infrequently for the

severity of the patient's complaints and/or presentation;

i.      failing to take due note of plaintiff's physical presentation and

medical history, which demonstrated that the patient was indeed

suffering from a life and limb threatening condition;

j.      failing to provide adequate cardiologic care;

k.   failing to perform serial and frequent carotid studies;

l.   failing to provide adequate neurological care;

m.   failing to observe the fact that the patient was not responding in

an appropriate manner to the empiric treatments offered to him;

n.   failing to properly consider and rule out progressive

atherosclerosis of the carotid arteries..

36.   The negligence of Defendant, by and through the acts and/or omissions of

its agents, employees and/or servants also consisted of the following:

a.   failing to supply adequate and skilled personnel who could

reasonably and safely monitor the physical condition of plaintiff

during the aforementioned treatment;

b.   utilizing substandard medical techniques in the performance of

the aforementioned treatment upon plaintiff;

c.   failing to conform to accepted standards of medical practice and

care in the diagnosis, treatment, and medical and surgical

management of an injury of the type suffered by plaintiff;

d.      failing to provide adequate supervision of its staff and employees

to insure that proper hospital practices and procedures are followed;

e.      failing to employ or hire doctors and nursing staff with adequate

experience, qualifications and skills to treat persons exhibiting

symptoms and complaints as were exhibited by this patient;

f.      failing to employ or hire doctors and nursing staff with adequate

experience, qualifications and skills properly to perform medical

procedures upon persons exhibiting symptoms and complaints as

were exhibited by this patient.

## DAMAGES

37.     As a direct and proximate result of the failure of Defendant to properly care for

plaintiff, he has suffered severe physical pain, disability, suffering, mental anguish

and will continue to do so for an indefinite time in the future.

38.     As a direct and proximate result of the negligence of Defendant, plaintiff has

been obligated to expend various and diverse sums for the medical treatment

rendered to him and will continue to do so for an indefinite time in the future.

39.    As a direct and proximate result of the failure of defendant to properly care for

plaintiff, he has suffered significant loss of earnings, income and wages and will

continue to do so for an indefinite time in the future.

WHEREFORE, plaintiff demands judgment on this count against Defendant for

damages together with interest and the cost of suit, and such other relief as is determined to

be just and proper.  The amount of damages sued upon is in excess of the jurisdictional

arbitration limit.

FODERA & LONG, P.C.

Leonard V. Fodera

Allison Long

*Attorneys for Plaintiff*

DATE: 8/17/15